Please call the next case. 12-3206 Lisa Gutiérrez de Alvarez v. MacNeal Memorial Hospital Counsel, please approach. Good morning, Your Honor. Good morning. Identify yourselves and about how much time you request. Good morning, Your Honor. My name is Bob Sheridan from Clifford Law Offices. It's my privilege to represent Keith Haibison, who is a contendor in the appellant, and on behalf of the D'Aprizio family. My name is Susan Wang. I represent DHS of Illinois, better known as MacNeal Hospital. About how much time? If I could reserve just a few moments for rebuttal, Your Honor. Mr. Sheridan, proceed. Thank you, Judge. 12-3206 Lisa Gutiérrez de Alvarez v. MacNeal Memorial Hospital The briefs in this case, Your Honor, present everything, I believe, as clear-cut. And yet, I think Your Honors will probably find at the end of the day that there are some questions in here that are not entirely clear-cut. And I'm going to try to bring my points around to those primarily. One of the clear-cut issues that is going to implicate other things that perhaps are a little gray area is the application of DCSA, the Supreme Court's case which the hospital wishes to have applied by Your Honors to make a general rule of fundamental fairness in order to, in its words, trump the protections of the statute. Very briefly, this is important because it looks as though Judge Brewer, for whom I personally and our firm have the greatest respect as a conscientious judge, hardworking and committed to fairness, notwithstanding, seemed to agree with this concept that the idea of a fundamental fairness was a consideration right out of the box in making a determination as to whether or not the privilege was going to be waived with respect to some of these documents. DCSA is a case which, once decided, has never been applied by the Supreme Court again. It was a case which was, on its own language, was narrow on its facts, and the facts were twofold. One of them was that the... First of all, it has to be understood that this case was a case which dispensed with the requirement of a party placing their mental condition into issue, dispensed with it. And the court then, having done so, it said it did so for two reasons. First, that the information would supply complete and total defense to the claim, which is certainly not the case here. The second is that the party there was endeavoring to perform a fraud upon the court. And what had happened is that the plaintiff in the case had jumped out, or the allegations were jumped out in front of a vehicle, and then said that that was the defense. The guy jumped in front of my car. And he said, no, no, no, I was struck on the curb. And whether or not he was in fact suicidal and jumped out obviously was going to be a complete defense. All right. The Supreme Court said that in the interest of the dignity of the court system and all fairness, it was impossible to use the privilege in this case. No privilege in Illinois, the Supreme Court said, is absolutely absolute. And this was a case in which it was simply not going to be allowed to be applied. But it has never again, those circumstances have never arisen again, the Supreme Court has declined to apply it. But your argument is those situations, the situations in that case are not here. Absolutely right. But the reason that it's argued for is that, in fact, that is what the judge did in her order with respect to at least one of these productions.  The first order asked to produce the hospital records of two hospitals, Gerstein Center and Elmhurst Memorial Hospital. The second part of this contempt order, which was a separate order, that redacted records of Dr. Camilleri, who had been Lisa DiPrevio's prior psychiatrist. Now, with respect to probably both of these orders, but certainly with the Gerstein Center and Elmhurst order, the argument that has been made before this court, similarly made in the trial court, was effectively the basis for what the judge did. Here's what she said. She said, the treaters in this case, and particularly Dr. Zarif, had the opportunity to see these records. He reviewed them. She says he relied on them, but in fact, there's nothing to say he relied. But he did review them. And it was proper for him to do so. It is not a waiver of the privilege for one doctor to see the records of another one. Entirely within usual scope. So he looked at them. And the judge said, I know that this privilege is important. But in all fairness, I cannot leave, well, she didn't use the word plain field, but essentially, I cannot leave this uneven plain field. I cannot let the defendants not see the materials that this treater saw. Effectively adopting a fundamental fairness rule that the Supreme Court had expressed in DCSA. And that's not the appropriate standard. Well, the question is whether the door was opened by the interrogatory responses. Well, yeah. I guess the argument is that the door was opened by the interrogator. That's the question, yes. And for that, well, we say that it was not. Yes. Okay. And the reason that we say that it was not is that the Rita case specifically says that the character of the injury is not, the character, I'll rephrase it. The Rita case specifically says that when there is a physical injury, a brain injury, the fact that it has the neurological consequences, such as cognitive difficulties, which Lisa suffered, and those things do not change it into a psychiatric injury. And so, therefore, by putting those matters, by bringing forth those matters, you have not put your mental condition as an element of your case. Well, what are the damages here? How do you describe the damages? What are you asking for? Good question, Judge. Very good question. Lisa has a brain injury now, which she didn't have before. She has motor difficulties, which she didn't have before. She has cognitive difficulties, which she didn't have before. She has depression, which she had before. We're not asking for that. She has bipolar, which she had before. That's not part of our case. Is she more depressed now than she was before? Undoubtedly she is, or maybe she is. That's not part of our case. We're only asking for those damages that arise from her being overdosed and in a coma for a number of days. We're limiting our damages to what McNeil, the other defendants, caused. Where in the record would we be able to look to see that you are limiting your damages in the respect that you just stated? Apart from my representations to Your Honor, I believe in the record where you'll find that is in the arguments in the trial court, in which Mr. Haybasin said specifically that this is not about an augmentation of her depression, not an augmentation of her bipolar. I don't know that actually that that was impacted. Depression wasn't in the complaint either, was it? No. Neither was bipolar? Correct. So you can do an end run around the mental health confidentiality by just cherry-picking what you're going to complain about? Yes. So that the doctors can't see the whole record? Yes, yes. Your Honor has expressed it in a way which would seem to... So this was strategic? Well, here, your records are confidential. They're privileged, and there's a really important reason that should do so. The Supreme Court of the United States in the Jaffe case recognized this reason. Our Supreme Court has recognized the reason. The legislature recognized the reason that unless there's a real serious privilege in confidentiality, people will simply not talk to their therapist in the same way. So it's important. And it's important to Lisa, in this case, and probably to many other litigants. So that's right. She framed her case and gave up damages that she might well have had in order not to put her mental condition as an element in her case. That's exactly right. But she also framed her case so that the doctors who had been treating her wouldn't have access to information that might help them defend themselves. Absolutely. That's exactly right. That's what the statute's about. That's what the Rita case is about, the relevance. Counsel, the fact is that most people who have mental health treatment do not wind up in court, and they're not faced with having to make the strategic decision. They just go along with their lives, and they see their doctors, and they're fine. Everything works out for them. They are getting the care that they need. Lots of people do not wind up in lawsuits and in court. True. The confidentiality, I don't know, give it a number, 80% of the time, 60% of the time, 50% of the time, 99% of the time is an issue. It's only an issue when you are in court. And what I'm having trouble with here is that this judge did pay attention to the mental health code. She did pay attention to the confidentiality. She worked very hard to deal with it and to give it credit. And she still found that these records were necessary for these doctors to be able to properly defend themselves. Yes, that's what she found, Your Honor. I agree. That was exactly what she found. But she did not follow the law in finding it. Which part of the law didn't she follow? She did not follow the Supreme Court's decision in Rita. Well, Rita was a different case. Rita was physical injuries as opposed to injuries that had specifically to do with treatment. Lithium is used to treat psychological disorders. That is, lithium is indeed used to treat psychological disorders. But I would disagree with you, Your Honor, and I would ask the Court, by indulgence, and let me speak a few minutes with respect to it, that why this is not a different case than Rita. Rita, the gentleman was there for a knee surgery. It went wrong. And when the difficulties were concluded, he had a brain injury. Lisa was there. She was given lithium, which was a psychotropic drug, as Your Honor says. And when it went wrong and when it was over, she had a brain injury. Please, Your Honor. The reason that went wrong is because they didn't monitor the dosage that she was getting. That's a purely medical issue. What the distinction that counsel urged in their brief and that Your Honor is now speaking about is to say this, that if a person, let's say, were to get overdosed with a drug in a medical situation, then their records would be protected, even though they ended up with a brain injury and other related sorts of things. Theirs would be protected. But because this overdose happened while they were giving her lithium, it will not be protected. That is effectively what they're arguing, and that's what Your Honor's concern is. And that's what we say is the incorrect part. She did not get this injury because they gave her bad therapy. They did not give this injury with anything that had to do with her treatment in terms of her psychiatric problem. It simply was too much medicine. It is a medical problem. They kept arguing that this is a psychiatric case. We keep calling it a medical case because it's a distinction with a difference. If they had put a needle that was painted to give her medicine, would that now deprive her of her privilege? She's deprived of her privilege because she happened to be in a mental facility. That wasn't the problem. The problem was as they overdosed her, they put her in a coma, and they messed up her brain. But what about the question of damages? You're asking for pain and suffering damages, right? Yes. Okay. So if you're asking for pain and suffering damages, in order to make that determination, the witnesses are testifying about those damages. They haven't testified, Judge. But they will testify, and you can put in your disclosures what they're going to testify to. That's the point I want to get to. Aren't the plaintiff's doctors experts using her medical records to form their opinions about what they're going to testify about? Isn't that correct? No. They're not using her medical records to formulate their opinions? But they're not retained experts, Judge. They're the treaters. They're the treaters. They got these records to give her treatment. But nevertheless, they formed some opinions based on those records, correct? I don't know. They reviewed the records. But they filed those Rule F2. Right. They did. And, Doctor, we have to be careful with this because there's differences. Dr. Zarif says that he reviewed them. I think it's Dr. McCarthy has really no connection with them. Dr. Landry didn't review them, but she did look at Dr. Zarif's. So there is a connection between what these treaters saw and the medical records. And there's no question about that. So here, let's talk for a second. And this gets to his question about damages. That's why we're there, to help prove her case and establish her damages. Yeah, but the damages that they're seeking to establish are not the aggravation of the prior condition. No, but doesn't that have something to do? If you're going to determine damages on a go-forward basis with someone in this situation, it's relevant, it seems, possibly, to look at what happened beforehand so you can compare. Because otherwise, I mean, in this situation, you have somebody who had a medical condition. Is the medical condition the same? Maybe it's better. Is it worse? We don't know. And that goes to your pain and suffering. If it's the same as it was before, she wasn't damaged. Well, that's true. Even though they may have given her more lithium. So it goes to the question of pain and suffering. Well, let me speak to this fully. Because, here, first, the damages that are claimed are the damages that are due, not exacerbation of the prior damages. Here's what the Supreme Court said at Rita. What date? Well, all right, this is Rita. This is 58, 199. Okay? Amelia, he was the plaintiff, did not place his mental condition at issue merely by claiming damages for what is neurological injury. Okay? Even, and then continuing on page 59, even as defendants maintain, psychiatric redictions have buried out causation, relevancy is not decisive in whether the plaintiff has introduced his mental condition as an element of his claim. So what we're saying is that the fact that this would be useful to the defense does not trump the privilege. She has to say that her mental condition, she has to put that in issue, make that part of her damages. She's not saying that. She's saying that she has a physical injury, and that brain injury has resulted in cognitive problems. And what the Supreme Court then goes on to say with respect to this matter, and this is a site in my library, and I'll find it, and I've got the page, because this is, let's see if I can find this real quick. What the Supreme Court says, all right, I can't find it real quick, so I'll tell you what the Supreme Court says. I'll get the site while counsel is speaking, is that there are alternatives, there are other things that could be done for the defendants to defend themselves. This privilege is not a bar to their defense. They are entitled to claim that many of the things that she's complaining about are simply the developmental continuation of the problems that she previously had. They can call, first of all, as the Supreme Court pointed out in the Rita case, they can call their own doctors who have examined her. They've got all kinds of psychological records for her that were not privileged, including all of their own and other records that were received in the first case. The one thing that they cannot see in forming their defense are the statements that she made confidentially to these therapists long ago. They have to do it without it, because that's the stuff that's protected. They can still make their case, but they don't have available these things to do it. So it's not a case where now they have no defense, they're going to be barred, they have to sit down and not be able to prepare or say anything contrary. No, they can do everything, but there's one thing. They can't look at her prior disclosures that she made, believing them to be confidential before any of this happened because they overdosed it. But is there going to be any testimony, based upon your interrogative responses, with regards to the records at issue? I mean, why look at that? I mean, I'm trying to figure out. They looked at the records. They were treating and they looked at the records. Why is that? Why would they do that? Because he's a treater. He's responsible to see what the... He was just treating her during the course of treatment. What doctor would see a patient without looking at her records? No, but we're talking about testimony at trial. But he's not going to testify to that at trial. No, I'm trying to figure out what he's going to testify at trial. I thought that... What he's going to testify at trial is that the examiner, and they concluded in one of the... Examiner after the... Yeah, that she had brain damage. And they believe that the cause of this brain damage was the lithium overdose and the coma that she went into for a number of days thereafter. And that's what they're going to testify to. And now she has seizures, which she didn't have before. And she has difficulty moving, which she didn't have before. And the reason that we're here is because now she also has some cognitive difficulties that she didn't have before. But they can't... I mean, because that door is open with regard to those damages that she didn't have before, why isn't that open the door under the Act, which has an exception, where the recipient of the mental health services be deemed to have introduced his or her mental condition only if the recipient or a witness, in this case witness on his behalf or her behalf, first testifies concerning the record or communication. But they're not going to be testifying about the records or communications. How's that? They're not going to be. Well, how's that? I mean, I'm just... Because the testimony about what her condition is does not call to say, here's the records of what happened before. They have to testify about the records. They're not going to testify about the records. But have they looked at them because in order to make their testimony about what her condition is today? Well, here's the thing. It might be well proper. I can assure the Court that nobody's going to testify about these records. It might well be proper to bar anybody from testifying about these records if somebody's worried that they're going to jump up and testify about the records. If Dr. Zarif or somebody else says, you know what? Here's one of the records from her previous hospitalizations. Let me tell you what it says. That, indeed, then the privilege is off. Okay? I agree with that. But that hasn't happened. And it's not going to happen. And the fact that the treaters, you know, treated her and did what they're supposed to do, looked at the records, doesn't mean that she has put her mental condition as an element in the case. It's her physical condition and the sequelae of that physical injury, which the reader, of course, does not put her mental condition into the case. Am I wrong?  Judge? Thank you. Thank you. Good morning. May it please the Court. Counsel. I guess I'm going to jump around a little bit based on what has been going on. And because the trial court focused on the fairness issue, I think I will also start there. And the question about whether the plaintiff was cherry-picking their damages is really what triggers this exception that the Court recognized. They have chosen not to state we are saying that the depression was aggravated. They're choosing not to say we have chosen not to say that the bipolar condition has been aggravated. However, we are choosing to claim that cognitive issues, which can be a hallmark, not a hallmark, but a symptom of depression or bipolar, as well as a neurological injury, we're going to claim that. And based on the reports we were given from these doctors, they all recognize that the cognitive issues preexisted the 2002 hospitalization to some point. So plaintiffs in cherry-picking didn't cherry-pick well enough. They have chosen something that was there before. And in doing so, the trial court recognized this doesn't seem fair that you can go into this and yet foreclose anyone from inquiring further or seeing the records to find out what the baseline really was. The problem isn't that these treaters saw other treaters' records. There's no problem with that at all. We wouldn't be here if that's all that had happened. What's happened is the plaintiffs have gone further and said, now we're going to call them. They didn't have to call them in their case. And for the first nine or seven years of the case, these folks didn't pop up. Suddenly in 2011, they've decided we're going to call these treaters to pursue this element of damages. And I think it actually goes beyond the pain and suffering element that attends a physical injury. They're literally claiming something that can be either organically caused or something from prior psychological issues. And they're trying to cut too fine a line by saying, no, no, no, no, it's just the organic cause that we're worried about here, foreclosing that their own newly disclosed opinion witnesses, if you will, are going to say, well, in reaching our opinion, we had to consider what her baseline was, which made us look at the earlier records. I know counsel has said no one's going to testify about the records. And it may be that these doctors don't get up and say, well, when you see record A, B, and C, here's what I see. But by offering an opinion that the lithium contributes, they've recognized in their reports that to some extent it was preexisting. And to be able to say the lithium had any role, they had to consider the earlier records. So whether they get up and – But does that go to damages? I mean, it's a very narrow exception. Right. So if it doesn't go to damages, then under the statute, it's okay. I mean, the privilege is a very strong privilege according to the courts. Correct. Reba says that. Rita says that. So – and it seems that that's what they're saying. They're trying – they're defining it in a very narrow way in order to the – it would be in the situation with an individual who had knee surgery and then had problems like Rita. If that individual had knee problems beforehand, you may have the doctor treating him about what his knee problems were beforehand. But that doesn't necessarily have anything to do with the damages. I understand the distinction that you're asking me about. And in the Rita – using Rita as the example, the knee problems, we're talking about something that's not Rita. Rita focused solely on did they place their mental health at issue. With respect to the fundal fairness that the courts have carved out as an exception, you don't have to find that by making this claim they've put their mental health at issue. So you don't have to look quite the same way the Rita court has. But that's – Right. But they also have another way of looking at it, which is under the second exception, statutory exception. I probably just said that wrong. Which is it's not just placing your mental health at issue. It's challenging any aspect of your treatment at McNeil for a psychological condition, a mental health condition. So there's three ways to get at this. The trial court chose the fundamental fairness exception, which is a judicially created exception. I think your question goes to was it placing the mental health condition at issue, though, if I understand you correctly. Right. And I think it is different because the plaintiff has to prove what they caused. And in order to know what they caused, they had to know what was there before. Right. And that's how it comes in, actually. It's not my defense. Right. It's they're trying to prove an element of damage. That's right. And so – and I think that helps them because, again, taking away the substantial justice issue, which Mr. Sheridan addressed at the beginning of his argument, the exception has to do with damage. Otherwise, if it has to do with treatment and you look at – this isn't something that's going to – this isn't anything that's going to help the hospital. This has to do with setting, I guess, a – determining what happened to her as a result of the overdose. That's what they're saying. It does not go to anything else. They're making a very careful delineation. But I don't think you can make that bright line delineation in this. You think it's all or nothing? I think that if you're going to – Right. No, no. I don't think it is. Privileges are tough. Right. I don't think it's all or nothing. Okay. And certainly, as a hospital, we would never try to be broadening a mental health privilege. We assert it a lot. But in this case, which is a case seeking recovery for services provided for mental health issues, we've triggered the NE aspects. You're saying – wait. Services provided for mental health? I thought – She was in our hospital seeking mental health treatment. I understand. But I thought the damages were all as a result of the overdose, supposedly, overdose of the liver. Which was for a mental health condition. So? So that we can avoid addressing the Rita case entirely, the issue of if you're just claiming neurological, is that – or an organic brain injury, is that really placing something at issue? By saying she is challenging the services we gave her for a mental health condition. But that goes to his argument that we're treating people with mental health issues differently than we treat somebody who has a problem with their knees. We are in a lawsuit. Because the legislature has made a difference. No, it hasn't. It only says there's an exception. First, they have to put it in – they have to have testimony concerning the records or communication. I mean, that's part of it. I mean, there is a limitation. And then it has to be for pain and suffering. If there are only – I read that, and with all due respect, I read that last clause of 10A1, that if the only cause is – if you're only saying pain and suffering, and that addresses the Webb versus Quincy case and some earlier cases that said, I'm just saying I want pain and suffering that attends to a physical injury, then you have to affirmatively put someone on the stand and testify about it. That's not talking about a case where you're challenging – you've either directly put your mental condition at issue, something beyond normal pain and suffering that we get in every single person injury case, or you have challenged an aspect of your mental health services. Now, that doesn't open the door to I get absolutely everything. But what it means is, is the privilege is possibly waived and the records are possibly discoverable. If you've challenged my mental health treatment for you, then records of your mental health condition from somewhere else, if it meets the other statutory factors, is it relevant, is it probative, is it not unduly prejudicial? You still have to look at that. So I don't get, as at least in one of the briefs, I don't want everything – well, of course I want everything, but I'm not asking for everything today. I get what's relevant now. They have waived the privilege by putting forth these amended interrogatory answers. Well, they put in issue the mental condition. I think they've done – they've placed her mental condition at issue with the amended disclosure. I also believe, though, that even if you don't find that, she has certainly placed at issue an aspect of the services I gave her, which is the second exception under the Act. Now, there's very few cases that deal with that second exception because they necessarily have to be mental health care cases. But this is one of them. So that I can get in through the second part of the Act as well as long as I can show these records are relevant and not prejudicial and otherwise admissible. And the trial court found that because in their reports, these doctors acknowledge, we've looked at them, we found them relevant. You don't have to look at all of that to treat someone. A lot of doctors do, a lot of doctors don't. They did. Now, if that's all the further they went, we aren't here. But they've said, we're now going to call them. And that's what opened the door to all of this. That's at least our position on that. I really only want to touch on one other thing, if I can, and it really is the Rita case, which is totally different than here. You've already recognized it's a knee case. It wasn't a case that was treating for a mental health condition at the hospital and something went wrong. That alone takes away a lot of Rita's impact in this case. In terms of their saying, a neurological injury, a brain injury that's neurological, does not mean that it's opening the door to a mental condition. As a general proposition, that's fine. But what they were saying is under the facts of this case, even the Supreme Court opinion limited themselves to the facts of that case. They didn't say, whenever you claim an organic brain injury, you're never opening up the door. The facts of that case simply had the plaintiff and his wife answering questions at a deposition that were posed by defense counsel. And they said, well, yeah, we think there's behavioral changes. That was the record in Rita. Under those facts, just claiming a neurological injury with behavioral components didn't open the door. In our case, they've gone beyond that. And that's why Rita really doesn't apply to this case. We've gone one step further. We have doctors, whether you call them experts, whether you call them 213F2 opinion witnesses, they're offering expert testimony that a lay person can't get up and say. If this was Ms. DiPrizio or her mother saying, well, I think she's worse, we might be back in the same position in terms of, did you put your mental health at issue? Let me ask you this. Sure. How has the plaintiff put her mental condition as an element of her claim? How? How. How can she? No, how has she? Oh, how has she? By her amended 213. What is it about the amended disclosure? She has identified within the reports of Dr. Zarif that he's going to testify that in light of the relatively recent decline in functioning, and it looks like this is on 754 of the record, in light of her relatively recent decline in functioning, a history of lithium toxicity, she may have an organic brain syndrome. In order to arrive at that opinion, you have to be talking about her prior treatment and condition. Yep. That was for which doctor? Dr. Zarif. Zarif. And I have in my briefs 754, so assuming that I didn't transpose my numbers, I think that's where it's in the record. Nancy Landry, who is at 754 must be the very first part of the disclosure, and her report is 764 to 68, talks about her suffering from mild to moderate cognitive impairment, slowing in attention speeds, executive functioning, things like that, and she says while depression can play a role in her cognitive deficits, the lithium toxicity may also play a role. Her own opinion is acknowledging it's a combination. Where is it, Susan? It's on her report. I have 764, 767, so that's within Landry's report, which is part of the amended F2 disclosures. And so by talking about the baseline, as you will, and now we see new, and they're making a claim for it, that is how they've placed their mental condition at issue. It's not just saying I have pain and suffering. I'm suffering pain and suffering because of my leg weakness, which was the first appeal. They were only claiming leg weakness and ordinary pain and suffering that comes with that like an auto accident. They've gone beyond ordinary pain and suffering at this point. They are calling treaters who are treating a mental condition. Both Zarif and Landry, excuse me, I'm not sure Landry does, but Zarif then goes on to talk about future treatment and prognosis. They are putting it in issue because now they're saying now you need to do this. Presumably Zarif is going to talk about the costs involved in the treatment and what we think the prognosis is. Their response would be that that's just going forward. That has nothing to do with what's going on with the pain. But again, they can't talk about what we think is causing it, which goes back to your question on damages. You can't talk about what's causing it without considering if it was there before. If those records, and I haven't seen them, say it's the same level, it's not a damage that they can recover for. But they're trying to. They're opening the door by trying to. And the trial court, even though, as you can see from our cross-appeal that there's no more, we don't think she went far enough. She went through hundreds of records and picked out records that used the same behavioral components in order to get records produced. That's what they're trying to keep us from seeing. Well, Dr. Landry specifically references depression. Correct. And that is a psychiatric term, not a neurological term. Correct. And so when Dr. Landry talks about depression, it seems to me that since Dr. Landry is their witness, that by itself that says, okay, their witness is now prepared to testify concerning a record that she has examined, and that brings mental health into the question. Because everybody else now has a right to know what was the origin of that depression, and has it gotten worse, and did it get worse because of this lithium or just natural causes? How in the world can you figure out what's baseline? The word that's been used before, where can you put the baseline? Is the baseline just from that lithium dose? Was she ever depressed before that? How would we know unless we looked at the records? And that's why we felt in challenging it that the trial court didn't go far enough because she didn't give us the records. Did they use any other psychiatric terms besides depression in those two? They discussed personality disorders and I don't want to misrepresent. I believe that one of them did talk about her. Dr. Zarif talked about her cognitive examination pattern and with reference to patients with bipolar, depressive, or anxiety disorders. And he hinted at perhaps a schizophrenia process so that they are looking at conditions she previously had. And those conditions might be responsible for her cognitive difficulties. They've all recognized they could be contributing. One doctor says that it's not necessarily the same pattern you see, but certainly then Dr. Landry comes in and says, you know, certainly depression could contribute to the worsening cognitive problems she's having. That's why we thought it should go broader. But certainly the eight records that were ordered produced here, based on what the judge has said in her oral ruling, they're dead on. But we think it should go further than that. And it's clear that if at least Dr. Landry had not used the term depression and either or both of the doctors had not used the terms bipolar and personality disorder, we wouldn't be having this discussion. I believe that's true because they both have, they have all said that because of it was preexisting and they could be also contributing to it. And has anybody disputed whether depression, bipolar, and personality disorder are psychiatric terms instead of neurological terms? I don't know how they could. I don't think so either. I'm just asking whether. I have seen nothing in the record that disputes that these are psychiatric, mental health, DSM-IV diagnoses. But it's the disclosure that then therefore opened the door. I'm perfectly willing to keep talking. I'm a lawyer. But if you have any other further questions, I'll be glad to answer them. Otherwise, we would simply ask that the court affirm the trial court findings. And actually, we thought it should go further with its review and produce more records, which I understand are not a part of a cross-appeal, but perhaps it's a part of this initial appeal, which wasn't quite broad enough as Justice Kaczynski has indicated. Thank you very much. I was searching for a page with respect to the Supreme Court's opinion on the necessity of there being no alternatives before records could be ordered. That's on page 62. If Your Honors have any other questions, I'll be happy to answer them. My question is, why have you not put her mental condition in this case as an element of your claim? You're saying it's not. Her mental condition is not an element of your claim. That has to be your argument, right? It is our argument. It has to be our argument. So why, I mean, we just heard why it is, so I'd like to have you respond to what we heard. Right, because the plaintiff is seeking Do you want some water? I'll manage, because it's a short answer. Thank you, Judge. The plaintiff is seeking and will not seek any exacerbation, any damages for exacerbation for previously existing conditions. Exacerbation? Yeah. But it's still, there's a relevancy there because of their testimony. Well, but I'm answering your question. And I'm hopeful that the answer satisfies both Your Honors and the law. She had bipolar. I don't know if her bipolar is any worse by reason of what happened. But if it is, she's not, that's not part of her claim. Her claim is only for those conditions that arise because of the brain injury. Now that may be a little difficult to sort out. But as the reader court says plainly, they're entitled to have examinations of her. They're entitled to see all of her medical records except for the ones that are privileged because she was disclosing information to therapists. And they can dispute that the things that we're claiming are not actually part of her prior condition because we are not asking for damages. Oh, thanks. Thank you very much. I know his answer is going to be longer than this. Thank you, Your Honor. Because we are not asking for damages because of her prior condition. Judge? You have a question, Judge? But you're asking for damages for something that might be partially the result of her prior condition. No. But your own experts have said that in their interrogatories. They have said that in their interrogatory. Your Honor, let me clarify. They've said in the interrogatories that she has this condition now. They say it might have been caused by its prior condition. If it was caused by its prior condition, we don't want it. It's not part of our case for anything that's caused by their prior condition. They're entitled to prove if they establish that it's caused by the prior condition, that it's not part of our case. We're not asking for damages either from it or from its exasperation. It's the only place in the record that you said that that's anywhere it was in an argument. And that's a pretty thin reed to go on right now. There isn't anything else. I mean, that's what we have to wrestle with because, I mean, you're making that representation, but that may not hold. And before the judge, she heard all that, and the question is whether the door was opened. It's unfortunate that this didn't arise after the witnesses were deposed and then we would have known more about what their opinions were. Thank you, Your Honors. You've all been very attentive, and thank you for your time. We thank both sides for your excellent arguments, and we'll take the matter under advisement. I also want to note that in the courtroom we have a visitor, a judge from South Korea, Judge Kim, who is here studying at Northwestern University Law School, and she observed today, and she heard two very good arguments, and I appreciate the counsel's arguments, and we'll take the matters under advisement for sure. Thank you.